UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  3/31/08
```

------------------------------------------------------------x

PHARO NAJI AKHENATEN,                           :          07 Civ. 970 (RJH)
                                                :
                 Plaintiff,                     :
                                                :
         - against -                            :          **MEMORANDUM OPINION**
                                                :          **AND ORDER**
                                                :
NAJEE, LLC, et al.,                             :
                                                :
                 Defendants.                    :
                                                :
------------------------------------------------------------x

In this action, *pro se* plaintiff Pharo Naji Akhenaten ("Plaintiff") asserts claims

for, *inter alia*, trademark infringement resulting from defendants' advertising and sale of

merchandise using the marks "NAJEE," "For Us By Us," and "FUBU." Plaintiff seeks

monetary damages, injunctive relief, an accounting, cancellation of defendants' registered

trademarks, and the destruction of all of defendants' allegedly infringing promotional

material and the means for producing such material.

Defendants GTFM, Inc. ("GTFM"), Bruce Weisfeld ("Weisfeld") (listed in

caption as "Bruce Weisfield"), FUBU The Collection, LLC ("FUBU Collection"),

SEABIAU, LLC (listed in caption as "FUBU RECORDS LLC dba SEABIAU, LLC"),

FUBU Films, LLC, SEAUABI, LLC (listed in caption as "FUBU ENTERTAINMENT,

LLC"), J. Alexander Martin ("Martin") (listed in caption as "Charles Fisher aka J.

Alexander Martin),[1] Daymond John, Keith Perrin (listed in caption as "Kieth Perrin"),

---

[1] It is somewhat unclear from Moving Defendants' motion papers whether or not Martin is one of the
Moving Defendants. Martin is not listed as a Moving Defendant in the movants' opening brief, but is
occasionally referred to as such. (*See, e.g.,* Defs.' Local R. 56.1 Statement of Material Facts ("Defs.'
Facts") ¶ 24; Defs.' Reply Br. 6; Peter Vranum Aff., June 29, 2007 ("Vranum Aff.") ¶¶ 6, 14.) The caption

Carl Brown, William Cox, and Peter Vranum (collectively, "Moving Defendants") have moved to dismiss Plaintiff's complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for an order granting summary judgment pursuant to Rule 56(b), asserting that the doctrine of *res judicata* and/or collateral estoppel bars all claims against the Moving Defendants asserted by Plaintiff in his complaint. For the reasons set forth below, the Court grants, in part, the Moving Defendants' motion for summary judgment.

## I. BACKGROUND

### A. Plaintiff's Complaint

*Pro se* plaintiff Pharo Naji Akhenaten ("Plaintiff") filed a complaint in this action on February 9, 2007 (the "Complaint"). Plaintiff asserts nine counts against defendants relating to his alleged rights in his "well known logo design" "NAJI" and his "slogan" "For U By Us," which he has "continuously used since on or about 1992" on clothing and other products that are advertised and offered throughout the United States.[2] (Compl. ¶¶ 6, 7.) Plaintiff states that he has acquired federal and state registrations for the marks "NAJI" and "PHARO NAJI AKHENATEN, FOR U BY US," and New Jersey state

---

of Plaintiff's Complaint lists "Charles Fisher aka J. Alexander Martin" as a defendant. Moving Defendants assert that Martin and Charles Fisher are not the same person and that Martin is therefore "not named as a defendant in this action." (Defs.' Br. 7 n.2; *see also* William H. Cox Aff., May 17, 2007 ("Cox Aff.") ¶¶ 1 n.1, 3.) It appears that Moving Defendants intend for Martin to be considered among the Moving Defendants only if the Court deems that he is named as a defendant in the action. (Cox Aff. ¶ 32; Vranum Aff. ¶ 24.) The Court must interpret this *pro se* plaintiff's complaint liberally, and will therefore presume that, if Charles Fisher and J. Alexander Martin are different people, Plaintiff intended to name both individuals as defendants in this action. Accordingly, the Court will treat Martin as one of the Moving Defendants.

[2] These counts are (1) "Federal and State Trademark Infringement"; (2) "False Advertisement, 15 U.S.C. 1125(a)"; (3) "False Designation of Origin"; (4) "Interference With Business or Prospective Economic Advantage"; (5) "Unfair Competition"; (6) "Fraudulent Trademark Registration"; (7) "Trademark Dilution"; (8) "Forbidden Importation"; and (9) "Cancellation of a Federally Registered Trademark." (Cox Aff. Ex. A.)

2

registrations for "NAJI, FOR U BY US," "PHARO NAJI AKHENATEN," and "TYRONE TROY MCRAE." (*Id.* ¶¶ 4, 6.)

Plaintiff alleges that the defendants have created consumer confusion as to the source of his products by their use of the marks "Najee," "NAJEE," "For Us By Us," "F.U.B.U.," and "FUBU" as tradenames, in advertising, and on merchandise sold in interstate commerce (*id.* ¶¶ 9, 18, 19, 20, 23, 26), and have fraudulently acquired and attempted to acquire federal registrations for Plaintiff's trademarks and similar marks by, *inter alia*, making false statements to the U.S. Patent and Trademark Office ("USPTO") (*id.* ¶¶ 5, 9, 11–14, 24, 27). Plaintiff also alleges that defendants James Todd Smith and his manager Martin have deceived the public by misrepresenting the origins of defendants' FUBU brand in advertising and public statements. (*Id.* ¶¶ 12, 14, 20.) Finally, under the heading, "Interference With Business or Prospective Economic Advantage," Plaintiff alleges that the "[d]efendants have destroyed Plaintiff's places of business and he has lost valuable manufacturing equipment and suffered interference with his prospective interstate licensing and intracorporate structure. Plaintiff's potential investors have been alarmed by the actions of defendants and all potential contracts have been severed." (*Id.* ¶ 22.)

As relief for the defendants' actions, Plaintiff seeks, *inter alia*, one billion dollars in damages per mark for each type of product on which defendants used Plaintiff's "NAJI, FOR U BY US trademark and slogan." (*Id.* 12 ¶ 1.l.)

Because Plaintiff is proceeding *pro se*, the Court is required to interpret his pleadings liberally to "raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994). With this in mind, the Court reads Plaintiff's

3

Complaint as asserting claims for (1) trademark infringement under federal (15 U.S.C. § 1114(1)) and state law; (2) "false designation of origin, false or misleading description of fact, or false or misleading representation of fact" under 15 U.S.C. 1125(a); (3) tortious interference with contractual relations; (4) tortious interference with prospective business relations; (5) unfair competition under New Jersey state law, N.J.S.A. 56:4-1; (6) "false or fraudulent" registration of a federal trademark under 15 U.S.C. § 1120;[3] (7) trademark dilution under federal law, 15 U.S.C. § 1125(c), and New Jersey state law, N.J.S.A. 56:3-13.20; (8) importation of infringing goods in violation of 15 U.S.C. § 1124,[4] and (9) cancellation of Defendants' registered federal trademarks under 15 U.S.C. § 1119 for false statements allegedly made by Defendants to the USPTO.[5]

---

[3] Under 15 U.S.C.A. § 1120, "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured hereby for any damages sustained in consequence thereof."

[4] Under 15 U.S.C.A. § 1124, "[N]o article of imported merchandise which shall copy or simulate the name of any domestic . . . manufacturer, or trader . . . or which shall copy or simulate a trademark registered in accordance with the provisions of this chapter . . . shall be admitted to entry at any customhouse of the United States. "[W]hile 15 U.S.C. § 1124 does not itself provide a remedy to the holders of infringed trademarks, 15 U.S.C. §§ 1116 and 1117 authorize injunctive relief and damages, respectively, for a 'violation of any right of the registrant of a mark registered in the Patent and Trademark Office.' Several courts have interpreted these provisions as creating a private cause of action under 15 U.S.C. § 1124." *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742, 748 (W.D. Tex. 2006) (citing *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992); *Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 308 (C.D. Cal. 1996)).

[5] Pursuant to 15 U.S.C. § 1119, "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." "Misstatements in registration applications will cause cancelation only if they were made with knowledge of their falsity and if they were material to the decision to grant the registration application. Fraud must be proven by clear and convincing evidence." *Ushodaya Enters., Ltd. v. V.R.S. Int'l, Inc.*, 63 F. Supp. 2d 329, 335 (S.D.N.Y. 1999) (internal citations omitted).

4

## B. The Prior Action

On January 22, 2004, Plaintiff filed a complaint designated as "Complaint 1" in the District of New Jersey action docketed Civ. No. 03-5382 (the "Prior Action") against defendants GTFM, FUBU Collection, Martin, James Todd Smith, Charles Fisher, and NAJEE Inc.[6] (William H. Cox Aff., May 17, 2007 ("Cox Aff.") ¶ 6, Ex. C; Pl.'s Local R. 56.1 Statement of Material Facts ("Pl.'s Facts") ¶¶ 3–4.) After GTFM, FUBU Collection, and Martin filed an answer including counterclaims (Cox Aff. Ex. D), Plaintiff filed a "Reply to Answer, Affirmative Defenses, and Counterclaims– (Complaint 1)" ("Reply"), which both Plaintiff and the Moving Defendants characterize as "effectively amending" Complaint 1. (Defs.' Local R. 56.1 Statement of Material Facts ("Defs.' Facts") ¶ 6; Pl.'s Facts ¶ 6; Cox Aff. Ex. G.) On November 1, 2004, the court granted GTFM, FUBU Collection, and Martin's motion to strike the Reply. (Defs.' Facts ¶ 7, 8; Pl.'s Facts ¶ 7, 8; Cox Aff. Ex. F.) Plaintiff then filed an "Amended Pleading [,] Reply to Answer, Affirmative Defenses, and Counterclaims– (Complaint 1)" ("Amended Reply"). (Defs.' Facts ¶ 9; Cox Aff. Ex. E.) After cross-motions for summary judgment, the court granted the motion filed by GTFM, FUBU Collection, and Martin and denied the motion filed by Plaintiff. (Defs.' Facts ¶ 11.)

---

[6] Though Plaintiff proceeded in the Prior Action under his given name, Tyrone Troy McRae, he concedes that Pharo Naji Akhenaten is the same person as the plaintiff in the Prior Action. (Pl.'s Local R. 56.1 Statement of Material Facts ("Pl.'s Facts") ¶¶ 1–3.) Plaintiff explains that while "his biological mother named him 'Tyrone Troy McRae,'" Pharo Naji Akhenaten "is his rightful, national, indigenous, righteous name from Father Allah, in the Hieroglyphic language preserved in Qur'aanic and Hebrew Text. Plaintiff is a Qariat-ul Qur'aan-il Kaariym fi- lisaan Sidqin-il 'Alliyaa [A reciter of the Confirmations of the Noble Qur'aan, in Classical Arabic] and a descendant of Allah *by Blood*; a Muslim by Nature, *not by religion* and he is not a mere juristic person [TYRONE TROY MCRAE] or 'straw man' based upon the Black Code but an indigenous aborigine; a natural person under the Divine Protection of Allah, the God of Horus, Isis, Osiris, Ra; Abraham, Isaac, Jacob et al., The Most Honorable W.D. Fard, The Honorable Elijah Muhammad and The Honorable Minister Louis Farrakhan." (*Id.* ¶ 1) (emphasis in original).

5

In the March 18, 2005 summary judgment decision, the district court stated that it interpreted Plaintiff's Complaint and Reply as alleging trademark infringement, unfair competition, and false designation of origin claims with respect to Plaintiff's alleged trademark rights in the "NAJI" and "FUBU" marks based on the defendants' use of the these marks on their apparel. (Cox Aff. Ex. H at 2.)

In a brief opinion, the court held, with respect to the "FUBU" mark, that

Plaintiff has provided no evidence that he has any common law rights or commercial interests in that mark, that he suffered any damages with regard to Defendants' use of that mark, that there is any likelihood of confusion or mistake, or that Defendants perpetrated a fraud on the United States Patent and Trademark Office. Even construing Plaintiff's submissions liberally, accepting all of his factual allegations as true, and drawing all reasonable inferences, Plaintiff has plead [sic] no facts which would constitute a claim regarding the FUBU mark.

$(Id.)^{7}$

The Prior Action was ordered closed in an order dated March 31, 2005. (*Id.* Ex. I.) Plaintiff appealed to the Third Circuit Court of Appeals, which affirmed the district court's decision on November 8, 2005. With respect to the "FUBU" mark, the Third Circuit opinion addressed only Plaintiff's failure to establish that he had rights in this mark. On this issue, the Third Circuit reached the same conclusion as did the district court, holding that "[t]here was no evidence whatever [sic] that either McRae or his corporation had any common law or commercial interests in the FUBU mark." (*Id.* Ex. K at 3 n.2.)

---

[7] With respect to the "NAJI" mark, the court held that because Plaintiff's corporation, not Plaintiff, was the registered owner of the "NAJI" trademark, Plaintiff, proceeding *pro se*, could not maintain an action for infringement of the "NAJI" mark. (Cox Aff. Ex. H at 2.) The court also held that because Plaintiff had not provided evidence that he, independent of his corporation, had suffered any competitive injury, he could not maintain an unfair competition claim. (*Id.*) On appeal, the Third Circuit affirmed, agreeing with the district court (1) that [Plaintiff] suffered no competitive injury independent of his corporation," (2) that the rights to the "NAJI" mark were held by Plaintiff's corporation—"the real party in interest," and (3) that Plaintiff had "no rights in the litigation separate from the corporation." (*Id.* Ex. K at 3.)

6

Plaintiff then moved the United States Supreme Court for leave to proceed *in forma pauperis.* (Defs.' Facts ¶ 16; Cox Aff. Ex. L.) The Court denied Plaintiff's motion and granted him until October 26, 2006 to pay the required docketing fee and file a petition in compliance with the Court's rules. (Defs.' Facts ¶ 16; Cox Aff. Ex. L.) Plaintiff did not pay the fee or file a petition before the Court's deadline. (Cox Aff. Ex. L.)

## C.    The Moving Defendants

According to an affidavit submitted by defendant Weisfeld, Moving Defendants Martin, Daymond John, Keith Perrin, and Carl Brown were the founders of the FUBU brand, which they sold to defendant GTFM. (Bruce Weisfeld Aff., May 18, 2007 ("Weisfeld Aff.") ¶ 7; *see also* Cox Aff. ¶ 4; Defs.' Facts ¶ 24.) GTFM currently owns a federal trademark registration for the mark "FUBU"; the "FUBU" trademark was assigned to GTFM by Martin on or around January 26, 1996. (Weisfeld Aff. ¶ 7.)

Weisfeld is the president of defendant GTFM, and an officer of defendants SEABIAU, LLC, FUBU Films, LLC, and SEAUABI, LLC. (*Id.* ¶ 1.) The Moving Defendants never explain the relationship between the corporate defendants GTFM, SEABIAU, LLC, FUBU Films LLC, and SEAUABI, LLC. However, Weisfeld asserts in his affidavit that Weisfeld, SEABIAU, LLC, FUBU Films LLC, and SEAUABI, LLC all used the "FUBU" mark with permission of GTFM. (Weisfeld Aff. ¶ 6; *see also* Defs.' Facts ¶ 23; Cox Aff. ¶ 29.)

Defendants Cox and Vranum represented defendants GTFM, FUBU Collection,

and Martin in the Prior Action. (Defs.' Facts ¶ 25; Cox Aff. ¶ 1.)[8]

## II.  DISCUSSION

### A.  Plaintiff's claims relating to the "FUBU" mark

#### 1.  *Res judicata*

The Moving Defendants assert that *res judicata* precludes Plaintiff from pursuing

claims against the Moving Defendants for use of the "FUBU" mark because of the

decision in the Prior Action that "Plaintiff has provided no evidence that he has any

common law rights or commercial interests in that mark, that he suffered any damages

with regard to Defendants' use of that mark, that there is any likelihood of confusion or

mistake, or that Defendants perpetrated a fraud on the United States Patent and

Trademark Office."[9]

Under the doctrine of *res judicata*, a party may be precluded from relitigating

claims that either were raised or could have been raised during a prior litigation.  *See,*

---

[8] Plaintiff asserts that Vranum and Cox are also representing Defendants in a pending cancellation proceeding before the U.S. Trademark Trial and Appeal Board. (Pl.'s Facts ¶ 25.)

[9] A court may consider *res judicata* or collateral estoppel as part of a 12(b)(6) motion to dismiss when its inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice.  *See, e.g., Angell v. U.S. Army Corps of Eng'rs*, 149 Fed. Appx. 34, 36 (2d Cir. 2005) ("Even though *res judicata* is an affirmative defense, it can be upheld on a Rule 12(b)(6) motion if it is clear from the face of the complaint that the plaintiffs' claims are barred"); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) ("[W]hen all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer."). The Moving Defendants received permission to file a motion to dismiss or, in the alternative, for summary judgment, limited to the issues of *res judicata* and collateral estoppel.  Defendants sent Plaintiff a "Notice to *Pro Se* Litigant Opposing Summary Judgment," as required by Rule 56.2 of the Local Civil Rules of the Southern and Eastern Districts of New York, which clearly informs Plaintiff of his obligation to "submit evidence . . . countering the facts asserted by the defendant and raising issues of fact for trial." Because the Court must consider materials outside the Plaintiff's Complaint to determine whether the Moving Defendants are in privity with the defendants in the Prior Action, *see infra*, it will treat the instant motion as a motion for summary judgment.

8

*e.g., Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); *N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254, 1259 (2d Cir. 1983) (stating that a "valid, final judgment on the merits" precludes the parties to that judgment and their privies from "subsequent litigation both of issues actually decided in determining the claim asserted in the first action and of issues that could have been raised in the adjudication of that claim"). *Res judicata* applies when "(1) the previous action involved an adjudication on the merits, (2) the previous action involved the [parties] or those in privity with them [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001). "Although fair play demands that a party have his day in court, the doctrine of res judicata forecloses a second day." *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985).

The March 21, 2005 decision in the Prior Action was an adjudication on the merits with respect to Plaintiff's claims relating to the "FUBU" mark. The defendants in the Prior Action were granted summary judgment on Plaintiff's claims regarding the "FUBU" mark because the court found that Plaintiff had "provided no evidence" that he had rights in that mark, that he had suffered any damages from the defendants' actions, that the defendants' products had created any likelihood of consumer confusion or mistake, or that the defendants had engaged in fraud before the USPTO. (Cox Aff. Ex. H at 2.)[10]

---

[10] Plaintiff's argument that a dismissal for lack of standing is not a dismissal on the merits (Pl.'s Opp'n Br. 7–8) is not relevant to the Moving Defendants' motion, as only Plaintiff's claims with respect to the "NAJI" mark were dismissed in the Prior Action due to Plaintiff's lack of standing to bring such claims.

9

With respect to the second element, Plaintiff is correct that not all of the Moving Defendants were parties to the Prior Action. (Pl.'s Opp'n Br. 8.) However, *res judicata* may also be asserted by a party that is in privity with a party to an earlier action. Moving Defendants GTFM, FUBU Collection, and Martin were named in the Prior Action. The remaining Moving Defendants contend that they are in privity with one or more of these parties. (Defs.' Br. 13–15.)[11] *See, e.g., Lacy v. Principi*, 317 F. Supp. 2d 444, 447 (S.D.N.Y. 2004) ("When a party has litigated a claim to final judgment, that party cannot avoid the *res judicata* effect of that judgment by bringing suit against a new defendant that is in privity with the original defendant.").

"Traditionally, the doctrine of privity applied only to a narrow class of relationships between defendants in which a latter-sued defendant is 'so identified in interest with a party to a former litigation that he represents precisely the same right in respect to the subject matter involved.'" *Watson v. Mayo*, 07 Civ. 54, 2008 WL 538442, at *8 (S.D.N.Y. Feb. 26, 2008) (quoting *Kourtis v. Cameron*, 419 F.3d 989, 996 (9th Cir. 2005)); *see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995) (stating that the traditional definition of privity required a "successive relationship to the same rights of property," the modern conception of privity, in the *res judicata* context, applies when a defendant has "a sufficiently close relationship to the original defendant to justify preclusion."). "The doctrine of privity . . . is to be applied with flexibility." *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987). "[T]here is no bright line rule" as to whether privity exists for *res judicata* purposes. *Id.* "Rather, a finding of privity . . . depends on whether, under

---

[11] Plaintiff does not offer any argument regarding whether the Moving Defendants are in privity with the defendants in the Prior Action.

10

the circumstances, the interests of the [defendant] were adequately represented [in the earlier action]." *Id.*

Here, the interests of the Moving Defendants overlap completely with the interests of GTFM, FUBU Collection, and/or Martin in the Prior Action. In both actions, the only facts Plaintiff alleges in support of his claims regarding the "FUBU" marks are the defendants' use of the trademarks at issue in the promotion and sale of FUBU merchandise and Defendants' allegedly fraudulent registration of "FUBU" and/or other similar marks with the USPTO.[12] The only basis for liability of any of the Moving Defendants would necessarily be their participation, in some capacity, in these acts.[13] The Court can discern no distinctions in any of Plaintiff's pleadings as to the roles played by different defendants in these acts. There is an absolute identity of several defendants including the owner of the "FUBU" mark at issue. Plaintiff makes no attempt to specify the roles played by the other Moving Defendants except to state vaguely and conclusorily that the Moving Defendants "have contributed to the selling, manufacturing, and distribution of . . . FUBU merchandise" and that all named defendants are liable "vicariously, contributorily or otherwise individually, jointly and severally based upon the partnership of the corporate defendants and their contractual relations under the tradenames of 'NAJEE' and 'FUBU'." (Pl.'s Facts ¶¶ 19–21.)

Necessarily, each of the Moving Defendants shares a common interest in the issue that is dispositive as to the liability of *all* defendants—whether Plaintiff has any rights to

---

[12] Plaintiff apparently does not dispute that the facts on which his underlying claims are based are exactly the same as those asserted in the Prior Action, but instead argues that the decision in the Prior Action was incorrect. (*See, e.g.,* Pl.'s Opp'n Br. 7, 11, 13, 15.)

[13] Defendants Weisfeld, SEABIAU, LLC, FUBU Films LLC, and SEAUABI, LLC use the "FUBU" mark with permission of GTFM (*see* Weisfeld Aff. ¶ 6); defendants Daymond John, Keith Perrin, and Carl Brown sold the FUBU brand to GTFM (*see* Defs.' Facts ¶ 24); and defendants Cox and Vranum are the attorneys who represented some of the defendants in the Prior Action.

the "FUBU" mark (and therefore, whether Plaintiff could have suffered any injury from the defendants' actions). Moreover, the Moving Defendants' interests were adequately represented in the Prior Action, as indicated by the common representation of the Moving Defendants and GTFM, FUBU Collection, and Martin in the Prior Action. *See, e.g., Ruiz v. Comm'r of Dept. of Transp. of City of New York*, 858 F.2d 898, 903 (2d Cir. 1988) (stating that the fact that a party is represented by the same attorney that represented the parties with respect to whom privity is asserted is a factor of "singular significance" to the issue of privity).

Based on this record, the Court finds that all Moving Defendants have a "sufficiently close" relationship to the Prior Action defendants GTFM, FUBU Collection, and/or Martin to find that privity exists for *res judicata* purposes. *See Cameron*, 253 F. Supp. 2d at 623 ("*Res judicata* operates to preclude claims, rather than particular configurations of parties; Plaintiff's addition of new defendants, in the context of allegations of their involvement in the series of alleged deprivations, does not entitle him to revive the previously dismissed claims."). Many courts in this circuit have found the existence of privity under similar circumstances. *See, e.g., Lacy*, 85 Fed. Appx. at 254– 55 (finding Secretary of Department of Veterans Affairs to be in privity with veterans hospital named as defendant in prior action, where plaintiff did not allege that "[the secretary] somehow independently wronged him," but "[r]ather . . . that [the secretary] is liable by virtue of the conduct of the employees of the [hospital]"); *Watson*, 2008 WL 538442, at *7–9 (finding corrections officer to be in privity with co-employees named as defendants in prior action asserting claim based on same alleged facts); *Adams v. IBM Personal Pension Plan*, 07 Civ. 6984, 2008 WL 344699, at *2 (S.D.N.Y. Feb. 5, 2008)

12

(finding pension plan and plan administrator to be in privity with corporate sponsor named as defendant in prior action where plaintiff sought "to hold the present defendants liable for the same misconduct he alleged in the first action"); *Amadasu v. Bronx Lebanon Hosp. Ctr.*, 03 Civ. 6450, 2005 WL 121746, at \*8 (S.D.N.Y. Jan. 21, 2005) (finding that employees and institute "closely affiliated with" hospital that was a defendant in prior litigation with same plaintiff to have a "sufficiently close relationship" to be considered in privity with one another); *Melwani v. Jain*, 02 Civ. 1224, 2004 WL 1900356, at \*3 (S.D.N.Y. Aug. 24, 2004) (finding that even if sister companies with overlapping shareholders, officers, and directors "are separate entities with distinct corporate boundaries and different businesses, this would not preclude a finding of privity between the two companies for *res judicata* purposes, given the identity of interests and incentives between the two companies in defending against the same claims based on the same alleged wrongdoing"); *Marshall v. Nat'l Ass'n of Letter Carriers BR36*, 03 Civ. 1361, 2003 WL 22519869, at \*9 (S.D.N.Y. Nov. 7, 2003) (finding National Labor Relations Board, Equal Employment Opportunity Commission, and employees of these agencies to be in privity with United States Postal Service and letter carriers union named in prior actions involving "claims that arose out of the same set of events," citing fact that National Labor Relations Board, Equal Employment Opportunity Commission, and United States Postal Service are all government agencies).

Finally, with respect to the third element, a claim "could have been raised" in an earlier action for *res judicata* purposes if the two actions involve the same "nucleus of operative fact." *See, e.g., Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000); *see also Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir. 1991) ("[I]t is the

13

facts surrounding the transaction or occurrence which operate to constitute the cause of action") (internal quotation marks omitted). In other words, "it is the factual predicate of the several claims asserted that determines whether *res judicata* will apply," "not the legal theory upon which a litigant relies." *Saud*, 929 F.2d at 919, 920 (internal quotation marks omitted). Determining whether successive actions involve the same claims for *res judicata* purposes "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Id.* at 919 (internal quotation marks omitted); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002) ("To determine whether two actions arise from the same transaction or claim, we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.") (internal quotation marks omitted).

The instant action and the Prior Action involve exactly the same "nucleus of operative facts" with respect to the "FUBU" mark, *i.e.*, Plaintiff's alleged use of this mark in commerce since 1992, the promotion and sale by defendants of FUBU merchandise and the registration of federal trademarks for "FUBU" and similar marks. As a result, though not all of the causes of action asserted by Plaintiff in this action were in fact asserted in the Prior Action, any claim now asserted in Plaintiff's Complaint could have been asserted in the Prior Action. Accordingly, *res judicata* operates to bar all of Plaintiff's claims regarding the "FUBU" mark.[14]

---

[14] Plaintiff's assertion that his claim of fraud has not been previously litigated because the district court in the Prior Action "expressly declined to consider whether Defendants and his [sic] assignors had defrauded

14

Therefore, summary judgment is granted to the Moving Defendants on all of Plaintiff's claims with respect to the "FUBU" mark.

## 2. Collateral Estoppel

Moving Defendants argue in the alternative that Plaintiff's claims relating to the "FUBU" mark are barred by collateral estoppel arising as a result of the court's decisions in the Prior Action.[15] Generally, the doctrine of collateral estoppel bars the relitigation of an issue that was previously raised and litigated in an earlier action and was necessary to the judgment in that action. *See, e.g., Envtl. Def. v. U.S. E.P.A.*, 369 F.3d 193, 202 (2d Cir. 2004). Collateral estoppel "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94 (1980).

For collateral estoppel to apply, "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986).

Moving Defendants argue that collateral estoppel applies to two issues raised and decided in the Prior Action: (1) "whether plaintiff owns or otherwise holds any right or commercial interest infringed by the 'FUBU' trademark," and (2) "if so, whether he

---

the PTO" is not accurate with respect to the FUBU mark. (Pl.'s Opp'n Br. 8.) The March 18, 2005 decision specifically states that Plaintiff "has provided no evidence that . . . Defendants perpetrated a fraud on the United States Patent and Trademark Office." (Cox Aff. Ex. H at 2.)

[15] Plaintiff does not address the Moving Defendants' collateral estoppel argument in his opposition brief.

15

suffered any damages with regard to the Moving Defendants' use of the FUBU mark." In the Prior Action, the court found that Plaintiff had failed to prove that he had "any common-law rights or commercial interests" in the "FUBU" mark or that "he suffered any damages with regard to Defendants' use of that mark." (Cox Aff. Ex. H.)

These identical issues are raised by Plaintiff's Complaint in this action, which, as discussed above, is based on exactly the same factual allegations as the Prior Action and reasserts the three causes of action previously asserted (as well as others). Plaintiff does not dispute that these issues were actually litigated and decided or that Plaintiff had a full and fair opportunity to litigate these issues.

Whether the issues previously decided were "necessary to support a valid and final judgment on the merits" in the Prior Action is slightly more complicated. In the Prior Action, the court interpreted Plaintiff's pleadings as stating causes of action for trademark infringement, unfair competition, and false designation of origin. The court then held that there was no evidence (1) that Plaintiff had any interests in the "FUBU" mark, (2) that Plaintiff had suffered damages from the defendants' use of the "FUBU" mark, (3) that defendants' use of the "FUBU" mark had created any likelihood of confusion or mistake, and (4) that defendants had perpetrated fraud on the USPTO. (*Id.* Ex. H at 2.)

Clearly, the court's finding regarding defendants' fraud was not necessary to the court's decision, as fraudulent trademark registration is not a necessary element of any of the three causes of action addressed in the Prior Action.

As to the court's other findings, the "general rule" in the Second Circuit with respect to whether "alternative, independently sufficient grounds are 'necessary' to a

16

judgment" for collateral estoppel purposes "is that 'if a court decides a case on two grounds, each is a good estoppel.'" *Gelb*, 798 F.2d at 45 (quoting *Irving Nat'l Bank v. Law*, 10 F.2d 721, 724 (2d Cir. 1926)). "However, if an appeal is taken and the appellate court affirms on one ground and disregards the other, there is no collateral estoppel as to the unreviewed ground." *Id.* at 45.

On appeal of the Prior Action, the Third Circuit affirmed the district court's finding that Plaintiff had no interests in the "FUBU" mark but did not address the district court's findings regarding damages or likelihood of confusion. (Cox. Aff. Ex. K.) Therefore, these latter two findings do not have collateral estoppel effect. Clearly, however, the fact that Plaintiff had no interests in the "FUBU" mark was an independently sufficient basis for the judgment in the Prior Action, as all of the causes of action asserted therein were predicated on Plaintiff's alleged rights in this mark.

Therefore, the New Jersey district court's finding in the Prior Action that Plaintiff has no common-law or commercial rights in the "FUBU" mark is entitled to collateral estoppel effect and cannot be relitigated in the instant action.

Plaintiff's alleged rights in the "FUBU" mark constitute a necessary basis, and the *only* basis on which Plaintiff alleges any right to relief, for his asserted causes of action for trademark infringement, false designation of origin, tortious interference with contractual relations, tortious interference with prospective business relations, unfair competition, fraudulent registration under 15 U.S.C. § 1120, trademark dilution, and unlawful importation of infringing goods. Consequently, Moving Defendants are entitled to summary judgment on all of these causes of action with respect to the "FUBU" mark based on collateral estoppel on the issue of Plaintiff's interests in this mark.

Plaintiff's claim for cancellation of Defendants' federally registered trademarks under 15 U.S.C. § 1119 is also barred by collateral estoppel with respect to this issue. "Under the Lanham Act, a party must have the requisite standing to petition for the cancellation of a registered trademark." *See Yurman Design Inc. v. Chaindom Enters., Inc.*, 99 Civ. 9307, 2000 WL 897141, at *4 (S.D.N.Y. July 5, 2000) (quoting 15 U.S.C. § 1064).[16] "[W]hen a plaintiff has no right to use a name shown in a registered trademark of a defendant, that plaintiff has no standing to seek cancellation of the trademark." *In re Houbigant, Inc.*, 914 F. Supp. 997, 1002 (S.D.N.Y. 1996). "[A] petitioner for cancellation 'must show a real and rational basis for his belief that he would be damaged by the registration sought to be canceled, stemming from an actual commercial or pecuniary interest in his own mark.'" *Id.* (quoting *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 349 (9th Cir. 1984)).

Here, Plaintiff has no standing to bring an action for cancellation of any defendant's registered trademarks because the New Jersey district court has already determined that, at least as of March 18, 2005, Plaintiff had no common-law or commercial interest in the "FUBU" mark. *See Yurman Design*, 2000 WL 897141, at *4 (finding that party had no standing to assert action for cancellation of trademark where that party "allege[d] . . . no commercial or pecuniary interest in any trademark that is or will be damaged by continued registration of [adversary's] trademark").

Therefore, all of the claims asserted in Plaintiff's Complaint with respect to the "FUBU" mark are also barred by collateral estoppel.

---

[16] A plaintiff seeking cancellation of a federal trademark registration under 15 U.S.C. § 1119 must satisfy the standing requirements set forth in 15 U.S.C. § 1064. *See Yurman Design*, 2000 WL 897141, at *4 n.2; *Berliner v. Recordcraft Sales Corp.*, 81 Civ. 4358, 1987 WL 5805, at *9 n.3 (S.D.N.Y. Jan. 15, 1987).

## B. Plaintiff's claims relating to the "NAJI" mark

The Moving Defendants do not assert that *res judicata* or collateral estoppel precludes Plaintiff from pursuing claims in this action regarding the "NAJI" mark.[17] Instead, the Moving Defendants assert that Plaintiff does not allege infringement of the "NAJI" mark by the Moving Defendants (Defs.' Br. 11; Defs.' Reply Br. 4–5; Vranum Aff. ¶¶ 9–11), that "[n]one of the Moving Defendants has ever sold, manufactured or distributed any merchandise under the alleged 'NAJI' or 'NAJEE' trademarks, or anything similar to such alleged marks," and that "[n]one of the Moving Defendants has ever conducted business under the name NAJEE, Inc. or any other similar name, nor did NAJEE, Inc. ever merge with GTFM, Inc." (Weisfeld Aff. ¶¶ 3, 4). Moving Defendants seem to argue, therefore, that Plaintiff's Complaint should be dismissed in its entirety as to the Moving Defendants.

In fact, Plaintiff clearly *does* allege that the Moving Defendants infringed his rights in the "NAJI" Mark. The Complaint does not consistently distinguish between the

---

[17] The dismissal of Plaintiff's claims with respect to the "NAJI" mark in the Prior Action was a dismissal for lack of standing; the court held that Plaintiff could not maintain an action for trademark infringement or unfair competition because he did not own the trademarks in question *See, e.g., DEP Corp. v. Interstate Cigar Co., Inc.*, 622 F.2d 621, 624 (2d Cir. 1980) (upholding dismissal of trademark infringement claims brought by exclusive distributor of trademarked soap for lack of standing). As discussed *supra*, a judgment on the merits is required in order for a judgment to have preclusive effect under the doctrine of *res judicata*. "[A] dismissal for lack of subject matter jurisdiction is not an adjudication of the merits, and hence has no *res judicata* effect." *See, e.g., St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000). Because a dismissal for lack of standing is a dismissal for lack of subject matter jurisdiction, the dismissal of Plaintiff's claims in the Prior Action with respect to his alleged rights in the "NAJI" mark did not have preclusive effect. *Id.* ("Since a dismissal for lack of Article III standing is a dismissal for lack of subject matter jurisdiction, the [previous] judgment has no *res judicata* effect with respect to most of [plaintiff's] claims."). Moving Defendants do not raise the issue of whether or not Plaintiff has since acquired standing to assert claims for infringement of his alleged rights in the "NAJI" mark.

19

defendants as to their respective roles in the alleged acts. However, Plaintiff asserts in his opposition papers that his claims are directed to all of the named defendants (Pl.'s Facts ¶ 19), and that the Moving Defendants have both contributed to the sale, manufacture, and distribution of NAJEE merchandise and have used the "NAJEE" mark on footwear products (and, thereby, infringed his rights in the "NAJI" mark) (*id.* ¶ 20). While ultimately the evidence may or may not show that Moving Defendants were involved in the sale of the NAJEE products, it would be premature for the Court to rule on this issue in the context of Moving Defendants' motion, which is limited to the issues of *res judicata* and collateral estoppel arising from the decision in the Prior Action. Summary judgment is not appropriate at this stage of the litigation as to Plaintiff's claims against the Moving Defendants with respect to his alleged rights in the "NAJI" mark.

## C.  Plaintiff's cross-motion for summary judgment

As part of his opposition to the instant motion, Plaintiff purports to cross-move for "Summary Judgment for Fraudulent Trademark Registration and Cancellation of Federally Registered Trademarks." In light of the Court's ruling that Plaintiff's claims regarding the "FUBU" mark are barred by *res judicata*, Plaintiff's motion is denied with prejudice with respect to his claims for cancellation of defendants' registered "FUBU" trademarks.

## CONCLUSION

For the reasons stated herein, the Moving Defendants' Motion for Summary Judgment **[23]** is GRANTED with respect to all of Plaintiff's claims relating to the

"FUBU" mark. Plaintiff's claims regarding the "NAJI" mark remain asserted against all defendants. Plaintiff's Cross Motion for Summary Judgment **[28]** is DENIED.


SO ORDERED.

Dated: New York, New York
      March 31, 2008

                                   Richard J. Holwell
                            United States District Judge